```
                UNITED STATES DISTRICT COURT
                          FOR THE
                    DISTRICT OF VERMONT
```

BARBARA MILLER, on behalf of   :
MEKHI MILLER,                  :
                               :
     Plaintiff,                :
                               :
          v.                   :    Case No. 2:14-cv-5
                               :
TOWN OF MORRISVILLE,           :
PEOPLE'S ACADEMY, MORRISVILLE  :
POLICE DEPARTMENT, LAMOILLE    :
COUNTY MENTAL HEALTH,          :
BEHAVIORAL WELLNESS,           :
DEPARTMENT OF EDUCATION,       :
LAMOILLE UNION SOUTH           :
SUPERVISORY,                   :
                               :
     Defendants.               :

**OPINION AND ORDER**

Plaintiff Barbara Miller, proceeding *pro se* and purportedly on behalf of her grandson, Mekhi Miller, brings this action claiming that Defendants engaged in discrimination on the basis of Mekhi's race and learning disability. All served Defendants have moved to dismiss.[1] Arguments for dismissal include Barbara Miller's inability to represent her grandson *pro se*, Plaintiff's failure to establish federal subject matter jurisdiction, and failure to state a claim. Also before the Court are Ms. Miller's motions for default judgment, motion to amend the Complaint, and motion to "set aside" the motions to dismiss.

For the reasons set forth below, the motions to dismiss are

---

[1] The docket does not indicate service upon Defendants Department of Education or Lamoille Union South Supervisory.

**granted**, Barbara Miller's motions are **denied***,* and Mekhi Miller is granted leave to amend his pleadings, either *pro se* or through counsel, within 30 days.

### Factual Background[2]

Ms. Miller first claims that on October 4, 2012, she was informed by a school principal that Mehki was being suspended for putting his hands on a female classmate. The next day, the mother of another student threatened to shoot Mekhi if he did not leave her son alone. Mekhi reported this latter incident to Ms. Miller, who in turn informed police. A police officer came to the Millers' home and advised them to seek a protective order.

On October 8, 2012, Ms. Miller obtained the recommended protective order. On October 9, 2012, the woman who had threatened to shoot Mekhi obtained a protective order barring him from being near her son. On October 10, 2012 at the conclusion of Mekhi's suspension, Barbara and Mekhi traveled to the school for a re-entry meeting. The school developed a "safety plan" for

---

[2] This factual background summarizes the facts set forth in the Amended Complaint. There are currently three pleadings on the docket entitled "Amended Complaint." The first proposed Complaint was dismissed by the Court *sua sponte* and thus never docketed. Plaintiff subsequently filed the first "Amended Complaint" (ECF No. 6), and was entitled to file a second "Amended Complaint" (ECF No. 7) as a matter of right. See Fed R. Civ. P. 15(a)(1). However, any subsequent amendment required leave of the Court, *see* Fed. R. Civ. P. 15(a)(2), and no such leave has been granted. Accordingly, the Court will treat ECF No. 7 as the operative Amended Complaint. For purposes of the pending motions to dismiss, the factual allegations set forth in that pleading will be accepted as true. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

the two boys to be able to attend school without violating their respective protective orders. That plan included using different entrances and stairways. Mekhi also met with "Terrance" from Defendant Behavioral Wellness[3] to discuss his suspension.

Later that same day, Mekhi was taken home by a faculty member after police informed him that he was in violation of the protective order. Ms. Miller contacted "Terrance," who said he would speak with the police to determine what was going on. "Terrance" then informed Ms. Miller that the police said Mekhi could go to school.[4] On October 12, 2012, a state court judge made clear that Mekhi could indeed attend school. At that point, however, Mekhi had already missed several days of classes and required special education tutoring services in order to catch up on his work.

Ms. Miller next claims that in January 2010, Mekhi was assaulted by a teacher at People's Academy in Morrisville. The alleged perpetrator was Jason Derner, a teacher trained to work with special needs students. Mr. Derner was reprimanded for his conduct. Ms. Miller has since learned that when Mr. Derner was involved in a subsequent argument with a parent, he was reported

---

[3] Counsel for Behavioral Wellness has moved to dismiss in the name of the Copley Professional Services Group ("Copley"). ECF No. 38 at 1 (asserting the Copley has been "misidentified" in the pleadings).

[4] When Ms. Miller tried to contact "Terrance" several years later to inquire about who he had spoken with at the police station that day, he allegedly failed or declined to return her calls.

to the Department of Education and ordered to attend anger management classes. Ms. Miller alleges that Mr. Derner received a comparatively lighter punishment for his treatment of Mekhi because Mekhi is black.

The incident between Mr. Derner and Mekhi was allegedly reported to the Morrisville police. However, after two years with no response from the police, Ms. Miller made inquiries and was told that the police were unable to locate the complaint form. Ms. Miller obtained a letter from "the Behavioral Intervention person" attesting that they brought Mekhi to the police after the incident, but the police have not responded to the letter. ECF No. 7 at 6.

The police have also had interactions with Mekhi involving his home placement. After an argument with Ms. Miller in 2010, Mekhi went to the police and refused to go home that night. A mental health worker helped find a bed for Mekhi in the Hardwick area. The following day, after Mekhi told police that he would run away from wherever they placed him, he was placed in the custody of the Vermont Department of Children and Families. Ms. Miller claims that in placing Mekhi with the State, the police did not handle the situation properly in light of Mekhi's disabilities, which reportedly include "ADHD, ODD and emotional detachment disorder." *Id.* at 7.

The Amended Complaint further alleges difficulties in the

4

relationship between Mekhi and Defendant Lamoille County Mental Health Services ("LCMHS"). Mekhi allegedly had problems with many behavioral intervention specialists employed by LCMHS, at times refusing to meet with them. In 2011 or 2012, Mekhi was placed in a room by a behavioral interventionist and allegedly threw a chair, damaging a wall. Although Mekhi informed Ms. Miller that he would need to go to court to answer for his conduct, it is not clear whether a court date was ever set.

In the Amended Complaint's conclusion, Mr. Miller states that some of Mekhi's conduct was not his fault, but was instead due to his disabilities. She states that "getting to know him better would have helped" and that he should have been "rewarded when he earned it." *Id.* at 8. For relief, Plaintiff seeks money damages because Mekhi has reportedly been suicidal and "has never been exposed to racism until he came here." *Id.*

## Discussion

Each served Defendant has moved to dismiss. While there is significant overlap in Defendants' arguments for dismissal, there are also factual difference that require individual analysis. The Court will therefore address each Defendant's motion in the order filed.

I. **Lamoille County Mental Health Service's Motion to Dismiss**

   A. *Pro Se* **Representation**

   Defendant LCMHS moves to dismiss on several grounds, the

first of which is that Barbara Miller cannot represent her grandson *pro se*. LCMHS states upon information and belief that Mekhi was not a minor at the time this case was initiated, as the first docket entry is January 7, 2014 and Mekhi's date of birth is December 15, 1995. An attachment to the Amended Complaint (ECF NO. 6-6) also reflects a birth date of December 15, 1995. Accordingly, Mekhi was 18 when the case was filed.

A non-lawyer may not represent another person or entity in federal court. *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007); *see also* 28 U.S.C. § 1654 ("parties may plead and conduct their own cases personally or by counsel"). Consequently, as Mekhi was reportedly 18 years old when this case was filed, he cannot be represented by a person who is not a lawyer. Ms. Miller's appearance on his behalf is therefore improper.

Even if LCMHS is mistaken and Mekhi was a minor when his grandmother filed this case, she cannot represent him. *See Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) ("[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child."); *accord Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998); *Johns v. County of San Diego*, 114 F.3d 874, 876-77 (9th Cir. 1997) (joining "all other circuit courts addressing the issue [that] have held that the guardian or parent cannot bring a lawsuit on behalf of a minor in federal court without retaining a

lawyer."). With respect to representation of minors by non-lawyers generally, the *Cheung* court reasoned as follows:

> It goes without saying that it is not in the interests of minors or incompetents that they be represented by non-attorneys. Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected. There is nothing in the guardian-minor relationship that suggests that the minor's interests would be furthered by representation by the non-attorney guardian.

906 F.2d at 61.

Ms. Miller contends that because she has been given power of attorney for Mekhi's affairs, she may provide legal representation. However, the granting of a power of attorney to a non-lawyer does not enable that person to appear in court on the grantor's behalf. *See Snyder v. Perry*, 2015 WL 1262591, at *6 (E.D.N.Y. Mar. 18, 2015) ("Even if [the plaintiff] has conferred upon [his daughter] a power of attorney, [the daughter] may not represent [her father] in Court as a *pro se* litigant."); *Gabayzadeh v. Taylor*, 639 F. Supp. 2d 298, 301-02 (E.D.N.Y. 2009) (noting that federal law prohibits the practice of law on behalf of another person "regardless of the authority purportedly conferred by execution of a power of attorney" (internal quotation marks and citations omitted)).

Ms. Miller has already been notified that she cannot represent her grandson. In an Opinion and Order dated May 9, 2014, the Court ruled that "[i]f Mekhi is a minor, Rev. Miller

7

may file the Amended Complaint on his behalf, but only if she is represented by an attorney. If he is an adult, he must file his own motion to proceed *in forma pauperis*." ECF No. 3 at 7 n.1. The Court also granted Plaintiff 45 days in which to file an Amended Complaint.

Since that Opinion and Order, three Amended Complaints have been docketed, each signed by Barbara Miller. Mekhi has not moved to proceed *in forma pauperis* or entered an appearance *pro se*. Nor has Barbara Miller alleged her own injuries. Accordingly, the Court cannot adjudicate the Amended Complaint, and LCMHS's motion to dismiss is **granted** on this basis. *See DePonceau v. Pataki*, 315 F. Supp. 2d 338, 341–42 (W.D.N.Y. 2004) (finding that *pro se* plaintiff lacked standing to file § 1983 complaint on behalf of other individuals, even though they had given him power of attorney). Within 30 days from the date of this Opinion and Order, Mekhi must appear *pro se* or through counsel and file a properly-signed Amended Complaint. Failure to do so will result in the dismissal of this case without prejudice. *See Berrios v. N.Y. City Hous. Auth.*, 564 F.3d 130, 135 (2d Cir. 2009) (remanding to the district court and instructing that "[i]f counsel is not secured or appointed, the court may dismiss the complaint, but without prejudice").

B. **Amending the Pleadings**

While an amended pleading is required so that Mekhi can

8

appear either *pro se* or through counsel, leave to amend may be denied if his claims would ultimately be futile. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The Court will therefore proceed to LMCHS's other arguments for dismissal, as they relate directly to the question of futility. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss . . . .").

LMCHS first contends that Plaintiff has failed to establish a basis for federal subject matter jurisdiction. The Amended Complaint alleges discrimination on the basis of race and disability, each of which is potentially protected under federal law. However, the Amended Complaint does not offer a specific legal basis for liability on the part of LMCHS, a private entity. While such laws exist, they require certain factual allegations. *See, e.g.,* 42 U.S.C. § 1981 (requiring allegations of intentional racial discrimination concerning the rights "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property."). Those types of factual allegations are absent here.

However, when considering subject matter jurisdiction, the factual validity of the claim "is irrelevant to the question of whether the District Court has subject matter jurisdiction over

9

[the] complaint." *Carlson v. Principal Fin. Grp.*, 320 F.3d 301, 307 (2d Cir. 2003). Furthermore, when evaluating a *pro se* complaint a court should not dismiss for lack of subject matter jurisdiction if the complaint can plausibly be read to set forth a federal cause of action. *Cf. Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–76 (2d Cir. 2006) (emphasizing the importance of liberally construing *pro se* submissions in the context of a Rule 12(b)(1) motion). Here, the Amended Complaint alleges discrimination — an area that is more than plausibly covered under federal law.

The Court must also address whether an amended pleading would withstand a Rule 12(b)(6) motion. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a pleading under Rule 12(b)(6), a court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant. *ATSI Commc'ns*, 493 F.3d at 98.

Here, the allegations against LCMHS are sparse. There are references to behavioral intervention personnel, to Mekhi's interpersonal problems with counselors, and to an incident where Mekhi threw a chair and damaged a wall. There is a general

10

conclusory allegation of discrimination on the part of all Defendants, but no allegations of specific discriminatory acts by LCMHS or its employee.

It is well established that conclusory allegations of discrimination do not suffice. *See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (remanding to give *pro se* plaintiff opportunity to amend where complaint "fails to offer more than conclusory allegations that he was discriminated against because of his race") (internal citation omitted); *Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 269 (E.D.N.Y. 2009) ("Even liberally construed, plaintiffs' complaint fails to allege any facts relating to race, other than a conclusory statement that defendants retaliated and discriminated against plaintiffs based on their being African-American, which is insufficient under *Iqbal*."). Nonetheless, giving the pleadings in this case the required liberal reading, it is plausible that the acts of mistreatment alleged against LCMHS were attributable to discrimination. By rule, leave to amend must be freely granted. *See* Fed. R. Civ. P. 15(a)(2). The Court will therefore permit Plaintiff to amend his claims against LCMHS to set forth non-conclusory allegations of discrimination. Any amended pleading will supersede all previous pleadings, and should therefore include all claims and allegations Plaintiff wishes to pursue. As set forth above, the Amended Complaint must

be filed without 30 days of this Opinion and Order.

## II. People's Academy's Motion to Dismiss

Defendant People's Academy ("People's") also argues that Barbara Miller cannot represent Mekhi in this case. For relief on that issue, People's suggests a stay until counsel can be hired. The motion to dismiss is **granted** on this point, and Plaintiff has 30 days to rectify the issue as set forth above.

People's further submits that any claims based upon events prior to January 2011 are untimely. Although the pleadings do not set forth a statutory basis for suit, People's surmises that Plaintiff is bringing civil rights claims under 42 U.S.C. § 1983. The limitations period for a Section 1983 claim "is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Vermont, a three-year statute of limitations applies to personal injury claims. *See* 12 V.S.A. § 512. Therefore, as this case was initiated in January 2014, any Section 1983 claim based upon facts prior to January 2011 is time-barred absent a valid argument for tolling the limitations period.

People's also references a release signed by Barbara Miller on June 29, 2011, based on events that occurred prior to and including April 10, 2012. The release, signed on behalf of Mekhi, stated that it "resolves all of [Ms. Miller's] complaints regarding the School District [which included People's] and Mekhi

12

Miller's experience as a student in the School District up until" the date of signing. ECF No. 35-1 at 10. The release was later ratified and amended to be effective through April 10, 2012. *Id.* at 4. Ms. Miller received a check for $10,000 as consideration for release.

Plaintiff has not responded to either the timeliness or release arguments.[5] Assuming the validity of the school's position, there are allegations in the pleadings that would survive both the statutory limitations period and the release. Those allegations include the October 2012 suspension, protective order, and confusion about whether Mekhi could return to school. It is unclear from the pleadings how school officials may have mistreated Mekhi in regard to those incidents, as it appears there was a lack of clarity from law enforcement about his right to remain in school. Nonetheless, as set forth above, the Court must construe the allegations broadly, and grant leave to amend if such leave would not be futile. People's personnel are consistently mentioned in the pleadings, and while Plaintiff must clarify and support any claims of discrimination, the Court cannot find at this time that future allegations against the school would be futile. Leave to amend is therefore granted as set forth above.

### III. Copley Professional Services Group's Motion to Dismiss

---

[5] No opposition to the motion to dismiss has been docketed.

Defendant Copley argues for dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. Copley, identified in the pleadings as Behavioral Wellness, is alleged to have employed "Terrance." It was "Terrance" who assisted with Mekhi's response to the school suspension and had related communications with police. There is also an allegation that, years later, "Terrance" declined to return Ms. Miller's telephone calls.

As discussed previously, the Court will assert subject matter jurisdiction on the basis of Plaintiff's discrimination claims. However, it is unclear what Copley and its employees may have done that was motivated by discriminatory animus, or that might render it liable under federal law. The motion to dismiss is therefore **granted**.[6]

While the lack of facts involving Copley renders leave to amend a close question, there are allegations of wrongdoing and general claims of discrimination. Consequently, and in keeping with Second Circuit precedent, see *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) (courts should grant *pro se* parties leave to amend "at least once"), the Court will allow Plaintiff the opportunity to amend his claims against Copley. The amended filing shall be submitted within 30 days, as set forth above.

---

[6] Although Copley did not argue for dismissal on the basis of Ms. Miller's representation of her grandson, the allegations against it would be dismissed on that basis in any event.

## IV. Morrisville Defendants' Joint Motion to Dismiss

The final motion to dismiss is filed by Defendants Town of Morrisville ("the Town") and the Morrisville Police Department ("MPD") (collectively the "Morrisville Defendants"). These Defendants again note that Ms. Miller cannot represent her grandson in this case. For reasons set forth above, the motion to dismiss is **granted** on that basis.

The Morrisville Defendants also move to dismiss any claims that occurred three years prior to the filing date, citing the statute of limitations in Section 1983 actions. While the Court has not yet ruled on that issue, as there may be estoppel or other responses to the limitations argument, any effort by Plaintiff to amend the pleadings should keep in mind any and all applicable limitations periods. The Court also notes that certain allegations against the MPD occurred in 2012, and would survive a timeliness challenge.

The Morrisville Defendants next contend that the MPD is not an entity that may be sued. Under Fed. R. Civ. P. 17(b)(3), the Court looks to Vermont law to determine whether a governmental entity has the capacity to be sued. The Court is not aware of any statute or ordinance in Vermont that permits a suit against a municipal police department, and has consistently held that such departments do not have the capacity to be sued. *See, e.g., Gorton v. Burlington Police Dep't*, 23 F. Supp. 2d 454, 456 (D.

Vt. 1998); *Hee v. Everlof*, 812 F. Supp. 1350, 1351 (D. Vt. 1993). Unless Plaintiff can establish a legal basis for such a suit, any claims brought against the MPD in an amended pleading will be dismissed.

Finally, the Morrisville Defendants submit that Plaintiff has failed to state a claim for municipal liability. A municipality such as the Town of Morrisville cannot be held liable under Section 1983 on a *respondeat superior* theory. *See Monell v. Dep't of Social Svcs. of City of New York*, 436 U.S. 658, 691 (1978); *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). Instead, a plaintiff must show "that action pursuant to official municipal policy caused the alleged constitutional injury." *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (internal quotation marks and citation omitted); *see also Monell*, 436 U.S. at 690–91.

To establish the existence of a municipal policy or custom, the plaintiff must allege: (1) the existence of a formal policy which is officially endorsed by the municipality, *see Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011); (2) actions taken or decisions made by municipal policymaking officials which caused the alleged violation of plaintiff's civil rights, *see Amnesty America v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004); *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000); (3) a practice "so persistent and widespread as to practically have the

16

force of law," *Connick*, 131 S. Ct. at 1359; *see also Green v. City of New York*, 465 F.3d 65, 80 (2d Cir. 2006), or that "was so manifest as to imply the constructive acquiescence of senior policy-making officials," *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004) (quotations and citations omitted); or (4) that "a policymaking official exhibit[ed] deliberate indifference to constitutional deprivations caused by subordinates." *Cash*, 654 F.3d at 334 (quotations and citations omitted); *see also Okin v. Village of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 439 (2d Cir. 2009).

Here, even giving the Amended Complaint the required liberal reading, the Court finds no allegations sufficient to state a Section 1983 cause of action against the Town of Morrisville. Specifically, there is no mention of a municipal custom or policy and no reference whatsoever to policymaking officials. Absent any such allegations, the Amended Complaint fails to state a plausible claim for relief. However, because an amended pleading might rectify these shortcomings, the Court will again permit the filing of a timely-filed Amended Complaint as set forth above.

**V. Plaintiff's Motions for Default Judgment**

Ms. Miller has filed two motions for default judgment on October 20, 2014 and October 24, 2014, respectively. ECF Nos.

17

32, 36.[7]  Defendant Copley notes in response that it received an extension of time to respond to the Amended Complaint through October 31, 2014.  On October 15, 2014, all other parties who had not yet filed responsive pleadings or motions were required to do so on or before October 29, 2014.  Each Defendant subsequently responded in a timely manner.  Therefore, the motions for default judgment are **denied.**

## VI. Remaining Motions

Plaintiff has also filed a motion for leave to amend and a motion to "set aside" Defendants' arguments for dismissal, including efforts to dislodge her as Plaintiff's legal representative.  Because the Court has already determined that leave to amend will be granted, and as Ms. Miller is not properly before the Court, the motion for such leave is **denied.**  Ms. Miller's motion to set aside arguments for dismissal is also **denied.**

## VII. Conclusion

For the reasons set forth above, Defendants' motions to dismiss (ECF Nos. 16, 35, 38, 40) are **granted** because Ms. Miller cannot represent Plaintiff in this action.  Within 30 days from the date of this Opinion and Order, Mekhi Miller must appear *pro*

---

[7] The Court will rule on Ms. Miller's motions because they are without merit.  The motions are also denied because Ms. Miller cannot act as Plaintiff's legal representative.

18

*se* or through counsel and file a properly-signed Amended Complaint. Failure to do so will result in the dismissal of this case without prejudice. Plaintiff's pending motions (ECF Nos. 32, 36, 46, 49) are **denied**.

Dated at Burlington, in the District of Vermont, this 14th day of April, 2015.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge